```
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                           )
RALF HARTMANN,                             )
                                           ) C.A. No. 20-cv-05778-JPC
                    Plaintiff,             )
                                           )
                                           )
              v.                           )
                                           )
GOOGLE LLC and YOUTUBE, LLC                )
                                           )
                    Defendants.            )
----------------------------------------- X
```

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**LEBOWITZ LAW OFFICE, LLC**
***Attorneys for Plaintiff***
***Ralf Hartmann***
Marc A. Lebowitz
Keith M. Getz
330 West 38th Street
Suite 1002
New York, New York 10018
(212) 682-6818

TABLE OF AUTHORITIES................................................ i

PRELIMINARY STATEMENT............................................... 1

SUMMARY OF ARGUMENT................................................ 2

ARGUMENT........................................................... 4

I.     APPLICABLE STANDARD OF REVIEW ............................... 4

II.    PLAINTIFF'S COMPLAINT SATISFIES THE REQUISITE PLEADING
       ELEMENTS FOR STATING A CLAIM FOR COPYRIGHT INFRINGEMENT ........ 5

              A.     Plaintiff Has Adequately Alleged Ownership and
                     Registration of A Valid Copyright in Each of the
                     Motion Pictures..................................... 5

                     1. *After the Rain*................................. 7

                     2. *Commander Hamilton*............................. 8

                     3. *The Last Tattoo*................................ 9

                     4. *Austin Powers*................................. 11

                     5. *Drop Dead Gorgeous*............................ 13

III.   PLAINTIFF HAS ADEQUATELY PLEAD
       COPYRIGHT INFRINGEMENT CLAIMS ............................... 18

       A.    Plaintiff Has Adequately Plead A Claim For
             Direct Copyright Infringement........................... 18

       B.    Plaintiff Has Pleaded a Predicate Act of Infringement
             in the United States Which Led to Further
             Infringement Outside the United States.................. 19

       C.    Plaintiff Has Adequately Plead A Claim For Contributory
             Copyright Infringement.................................. 20

       D.    Plaintiff Has Adequately Plead A Claim For
             Vicarious Copyright Infringement........................ 25

       E.    This Court Can Adjudicate Claims of Infringement Under
             Foreign Copyright Law................................... 26

CONCLUSION........................................................ 29

## TABLE OF AUTHORITIES

**Table of Cases:**

Arista Records LLC v. Lime Grp. LLC,
No. 06-CV-05936 (KMW), 2011 WL 1641978,
at *2 (S.D.N.Y. Apr. 29, 2011) ................................... 6

Arista Records LLC v. Usenet.com, Inc.,
633 F.Supp. 2d 124, 146 (S.D.N.Y. 2009) .................. 18, 26

Arista Records, LLC v. Doe 3,
604 F.3d 110, 118 (2d Cir. 2010) ............................... 21

Armstrong v. Virgin Records, Ltd.,
91 F. Supp. 628, 637 (S.D.N.Y. 2000) .......................... 27

Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) ....................................... 4

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007) ....................................... 4

Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,
145 F.3d 481 (2d Cir. 1998) .................................... 27

Byrne v. British Broad, Corp.,
132 F.Supp. 2d 229, 232 (S.D.N.Y 2001) ........................ 18

Capitol Records, LLC v. ReDigi Inc.,
934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013) ...................... 21

Carell v. Shubert Organization, Inc.,
104 F. Supp. 2d 236, 258 (S.D.N.Y. 2000) .................. 17, 28

Copyright.net Music Pub. LLC v. MP3.com,
256 F. Supp. 2d 214, 218 (S.D.N.Y. 2003) ...................... 16

Davis v. Blige,
505 F.3d 90, 99 (2d Cir. 2007) ................................. 16

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,
375 F.3d 168, 177 (2d Cir. 2004) ............................... 5

Feiner & Co., Inc. v. BMG Music Spain, S.A.,
2003 WL 740605, at *2 (S.D.N.Y. Mar. 4, 2003) ................ 19

Frink America, Inc. v. Champion Road Machinery Ltd.,
961 F. Supp. 398, 404-05 (N.D.N.Y. 1997) ...................... 28

Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,
443 F.2d 1159, 1162 (2d Cir.1971) ......................... 20, 21

Hutson v. Notorious B.I.G., LLC,
No. 14-CV-02307 (RJS), 2015 WL 9450623,
at *3 (S.D.N.Y. Dec. 22, 2015) ................................... 7


Kelly v. L.L. Cool J.,
145 F.R.D. 32, 35 (S.D.N.Y.1992) ................................ 6

Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC,
23 F.Supp.3d 344, 352-353 (S.D.N.Y. 2014) ......................... 6

London Film Prods. Ltd v. Intercontinental Communications, Inc.,
580 F. Supp. 47, 49-50 (S.D.N.Y. 1984) ......................... 27

McKenna v. Wright,
386 F.3d 432, 436 (2d Cir. 2004) ................................ 5

Metro-Goldwyn-Mayer Studios Inc. v. Grokster,
545 U.S. 913, 930 (2005) ....................................... 25

Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.,
712 F. Supp. 2d 84, 84 (S.D.N.Y. 2010). ....................... 17

Robert Stigwood Group, Ltd. v. O'Reilly,
530 F.2d 1096, 1100 (2d. Cir. 1976) ........................... 19

Roth v. Jennings,
489 F.3d 499, 510 (2d Cir. 2007). .............................. 5

Smith v BarnesandNoble.com, LLC,
143 F.Supp.3d 115 (S.D.N.Y 2015) .............................. 25

Subafilms, Ltd. V. MGM-Pathe Communications, Co.,
24 F.3d 1088, 1095-96 (9th Cir. 1994) ......................... 19

United Dictionary Co. v. G & C. Merriam Co.,
208 U.S. 260, 264-66 (1908) ................................... 19

Update Art, Inc. v. Modiin Pub., Ltd.,
843 F.2d 67, 73 (2d Cir. 1998) ............................ 19, 20

Warren v. John Wiley & Sons, Inc.,
952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013) ...................... 15

World Film Servs., Inc. v. RAJ Radiotelevisione Italiana S.p.A,
No. 97 Civ. 8627 (LMM), 1999 WL 47206,
at *8 (S.D.N.Y. Feb. 3, 1999) ................................. 28

**Statutues:**

Fed. R. Civ. P. 8(a) ........................................... 4, 5
Fed. R. Civ. P. 12(b)(6)  ........................................ 17
Fed. R. Civ. P. 12(d) ........................................... 17

**Other Authorities:**

M. *Nimmer and D. Nimmer,*
*Nimmer On Copyright* § 17.03 (1999) ................................ 28

Paul *Goldstein*, 3 Copyright:
Principles, Law and Practice § 16.2 (2000) ........................28

Plaintiff Ralf Hartmann ("Plaintiff"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of his Opposition to the Motion to Dismiss ("Motion") filed by Defendants Google LLC ("Google") and YouTube LLC ("YouTube" and together with Google, "Defendants").

## PRELIMINARY STATEMENT

This is a copyright infringement action arising out of Defendants' unauthorized use of Plaintiff's copyrighted movies *After the Rain* ("*After the Rain*"), *Commander Hamilton* ("*Commander Hamilton*"), *The Last Tattoo* ("*The Last Tattoo*"), *Austin Powers: International Man of Mystery* ("*Austin Powers*"), and *Drop Dead Gorgeous* ("*Drop Dead Gorgeous*," and collectively, the "Motion Pictures").

Defendants own and operate a digital distribution service called the Google Play Movies and TV ("Google Play Movies") – available in the United States and in over 100 countries around the world - through which end users can rent or purchase films and television shows. Google also owns and operates YouTube Movies and Shows ("YouTube Movies"), through which end users can rent or purchase films. YouTube Movies is accessible via the internet in the United States and in over 50 countries around the world.

Plaintiff alleges that he is the owner of the copyrights in the Motion Pictures and that from July 2017 through 2018, Defendants, without a license or Plaintiff's authorization, distributed (i) *After the Rain, Commander Hamilton* and *The Last Tattoo* to end users of Google Play Movies and YouTube Movies located in the United States;

and (ii) *After the Rain, Commander Hamilton, The Last Tattoo, Austin Powers and Drop Dead Gorgeous* to end users of Google Play Movies and YouTube Movies located outside the United States.

Defendants' Motion to Dismiss is notable for what is missing. Defendants do not deny that they streamed the Motion Pictures because they cannot deny this claim. Defendants do not claim that they had a license or were otherwise authorized to stream the Motion Pictures because they were not so authorized.  Instead, Defendants offer incorrect, misleading, or hyper-technical pleading arguments regarding Plaintiff's ownership of the copyrights in the Motion Pictures; all because Plaintiff's ownership of the copyrights was the result of a series of written assignment agreements.  Assignments of copyright in film library assets – such as the assignments of copyright in the Motion Pictures to Plaintiff - is not uncommon.  Defendants only raise the issue of ownership to provide cover for a facially premature and legally deficient motion to dismiss.

## SUMMARY OF ARGUMENT

Plaintiff is the owner of copyrights in the Motion Pictures *After the Rain, Commander Hamilton and The Last Tattoo* (SAC ¶¶ 15(a), (b), (c)), and the international copyrights in *Austin Powers* and *Drop Dead Gorgeous* (SAC ¶¶ 16(a), (b)).  Plaintiff obtained ownership of the copyrights in the Motion Pictures as a result of a series of written assignment agreements, entered into between Plaintiff and the then former owners of the respective copyrights (SAC ¶¶ 17-23).

Google owns and operates Google Play Movies, through which they offer, among other digital content, films and television shows for

rent or purchase, via the internet (SAC ¶¶ 27-28).  Google Play Movies is accessible to end users within the United States (SAC ¶ 29), and to end users within foreign countries, including, but not limited to Australia, United Kingdom, Germany, Ireland, Norway, Sweden, Finland, and Denmark (the "Foreign Countries) (SAC ¶¶ 30-31).

In addition to Google Play Movies, Google also owns YouTube Movies, through which end users can also rent or purchase films and television shows (SAC ¶ 32).  YouTube Movies is accessible to end users within the United States (SAC ¶ 33), and to end users located outside the United States, including, but not limited to Australia, United Kingdom, Germany, and Ireland (the "Foreign Countries") (SAC ¶ 34).

Plaintiff also alleges that Google owns or leases Data Centers in the United States (SAC ¶ 35), on which Google hosts the Google Play Movies and YouTube Movies websites and service, as well as digital content Google distributes to end users of Google Play Movies and YouTube Movies (SAC ¶¶ 37-38).  Plaintiff further alleges that all digital content which Google distributes via Google Play Movies or YouTube Movies – regardless of the ultimate destination or territory of distribution or location of a particular end user – is initially received by Google at, and copied to, its Data Centers located in the United States (SAC ¶¶ 40-42).

Moreover, Plaintiff alleges that in July 2017 and after, Defendants, without license or authorization, reproduced and distributed Plaintiff's Motion Pictures *After the Rain, Commander Hamilton* and *The Last Tattoo*, via Google Play Movies and YouTube

Movies, to its end users located within the United States (SAC ¶¶ 52, 54).  Plaintiff also alleges that in July 2017 and after, Defendants, without license or authorization, reproduced and distributed Plaintiff's Motion Pictures *After the Rain*, *Commander Hamilton*, The Last Tattoo, *Austin Powers and Drop Dead Gorgeous* via Google Play Movies and YouTube Movies, to end users located outside the United States (SAC ¶¶ 48-65).

**ARGUMENT**

I.   APPLICABLE STANDARD OF REVIEW.

Plaintiff is not required to prove his case in the complaint. Rather, he must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, the governing standard for resolving Defendants' motion to dismiss is "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although FRCP 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," the Supreme Court held in *Iqbal* that this means only that the complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In defining this threshold requirement, the Supreme Court emphasized that plaintiffs need only "nudge [] [their] claims . . . across the line from conceivable to plausible." *Id*. at 680 (citation omitted).

In making this determination, the burden lies entirely with

Defendants as the moving party, and the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). Indeed, the Second Circuit has held that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [asserted] defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). This liberal standard of construction is predicated on the fact that the question at this stage "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation omitted). The Court's role, therefore, "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Id.* at 176.

II.  PLAINTIFF'S COMPLAINT SATISFIES THE REQUISITE PLEADING ELEMENTS FOR STATING A CLAIM FOR COPYRIGHT INFRINGEMENT.

   A.   Plaintiff Has Adequately Alleged Ownership and Registration Of A Valid Copyright in Each of the Motion Pictures

In order to satisfy the pleading requirements of Rule 8(a) in a copyright infringement action, the copyright infringement claim must allege "(i) which specific original works are the subject of the copyright claim, (ii) that plaintiff owns the copyrights in those works, (iii) that the copyrights have been registered in accordance

with the statute, and (iv) by what acts during what time the defendant infringed the copyright." *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F.Supp.3d 344, 352-353 (S.D.N.Y. 2014) (internal citations omitted); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y.1992). Plaintiff has adequately plead ownership and registration of copyrights in the Motion Pictures which are the subject of his claims for copyright infringement.

Plaintiff alleges in the SAC that he is the owner of copyrights in the Motion Pictures *After the Rain Commander Hamilton* and *The Last Tattoo* (SAC ¶¶ 15(a), (b), (c)), and the international copyrights in *Austin Powers* and *Drop Dead Gorgeous* (SAC ¶¶ 16(a), (b)).  These allegations include the certificate numbers for written assignment of copyright agreements - recorded with the Copyright Office - which are part of a chain of title, whereby the respective registered copyrights in the Motion Pictures *After the Rain*, *Commander Hamilton*, *The Last Tattoo*, *Austin Powers* and Drop Dead Gorgeous were each transferred from owner to owner until these copyrights in the Motion Pictures were ultimately transferred, by written agreement, to Plaintiff (SAC ¶¶ 15-23).

No additional allegations are necessary to plead ownership and registration.  While to ultimately prevail on his claims, Plaintiff will need to prove that he is the owner of the copyrights in the Motion Pictures, see, e.g., *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-05936 (KMW), 2011 WL 1641978, at *2 (S.D.N.Y. Apr. 29, 2011) ("An assignee of a valid copyright who is not named on the registration as the owner has the additional burden of proving valid chain of

title."), at this stage of the litigation it is sufficient that he plausibly has alleged "that he received the copyright through a valid transfer and was the copyright owner during the alleged infringement." *Hutson v. Notorious B.I.G., LLC*, No. 14- CV-02307 (RJS), 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015).  Plaintiff has satisfied this burden, as well.

Defendants have offered no contrary evidence regarding registration or ownership. Despite having more than adequately plead the element, Plaintiff's ownership of a registered copyright in each of the Motion Pictures is more fully described below.

1.   <u>After the Rain</u>

As set forth in the SAC, Plaintiff is the owner of the copyright in the Motion Picture After the Rain; Copyright Reg. No. PA0001041433, dated March 12, 2001. SAC ¶ 15(a). Lebowitz Decl., Ex. A.  That registration lists Third Orbit Productions, Inc., Erste Beteiligung KC Medien AG & Co. KG ("Erste KC Medien") and Zweite Beteiligung KC Medien AG & Co. KG ("Zweite KC Medien") as copyright claimants for *After the Rain*.

As set forth in the SAC, Erste KC Medien and Zweite KC Medien then transferred and assigned all of their interests in the registered copyright in *After the Rain* to Capella Films, Inc. ("Capella Films") (SAC ¶¶ 20-21), and Capella Films then transferred and assigned all of its interests in the copyright in *After the Rain* to Plaintiff (SAC ¶ 22).  Each of the forgoing assignments were effectuated pursuant to written transfer of copyright agreements entered into and signed by each party (SAC ¶¶ 20-22).

7

Accordingly, the copyright for *After the Rain* was properly registered with the Copyright Office (Copyright Reg. No. PA0001041433; Lebowitz Decl., Ex. A), and that copyright was validly transferred, in a series of written transfer of copyright agreements, to Plaintiff (SAC ¶¶ 20-22).  Plaintiff owns the rights to *After the Rain* and is entitled to assert these claims for copyright infringement.

     2.   <u>Commander Hamilton</u>.

As set forth in the SAC, Plaintiff is the owner of the copyright in the Motion Picture *Commander Hamilton*, as referenced by a Memorandum of Exclusive Rights ("Memo of Exclusive Rights") filed with the Copyright Office under Reg. No. V3418D562, dated February 7, 1998 ("Commander Hamilton").  SAC ¶ 15(b). Lebowitz Decl., Ex. B.

The Memo of Exclusive Rights, filed with the Copyright Office, is an exhibit to a written finance and production agreement dated January 26, 1998 and entered into between Moviola Film & Television AB ("Moviola Film") and TV 4 AB ("TV 4"), on the one hand, and Capella International, Inc. ("Capella International"), Erste KC Medien, and Zweite KC Medien, on the other hand, wherein Moviola Film and TV 4, as the owner of the registered copyright in *Commander Hamilton* (Registration No. PA0000757212; Lebowitz Decl., Ex. C) granted to Capella International, Erste KC Medien and Zweite KC Medien, the exclusive and irrevocable right under copyright in *Commander Hamilton* (the "Commander Hamilton Agreement").  The Memo of Exclusive Rights, filed with the Copyright Office (SAC ¶ 15(b); Lebowitz Decl., Ex. B), reflects this valid, written transfer of copyright ownership in *Commander Hamilton*, from Moviola Film and TV 4 to Capella

International, Erste KC Medien and Zweite KC Medien, pursuant to the written Commander Hamilton Agreement.

As alleged in the SAC, Erste KC Medien and Zweite KC Medien then transferred and assigned all of their interests in the copyright in *Commander Hamilton* to Capella Films (SAC ¶¶ 20-21), and Capella Films later transferred and assigned all of its interests in the copyright in *Commander Hamilton* to Plaintiff (SAC ¶ 22). Each of the forgoing assignments were effectuated pursuant to written transfer of copyright agreements entered into and signed by each party (SAC ¶¶ 20-22).

Accordingly, the copyright in *Commander Hamilton*, previously registered with the Copyright Office (PA0000757212; Lebowitz Decl., Ex. C), was validly transferred, through a series of written transfer of copyright agreements, to Plaintiff. Plaintiff owns an interest in the registered copyright in *Commander Hamilton* and is entitled to assert these claims for copyright infringement.

    3.   <u>The Last Tattoo</u>

As set forth in the FAC, Plaintiff is the owner of the copyright in the Motion Picture *The Last Tattoo*, as referenced by Copyright Reg. No. PA0000824942, dated April 29, 1996. SAC ¶ 15 (c); Lebowitz Decl., Ex. D.

There are two copyright claimants on the registration for the Motion Picture *The Last Tattoo* – Plumb Productions, Ltd ("Plumb") and Capella International. SAC ¶ 15 (c); Lebowitz Decl., Ex. D.

As alleged in the SAC, Capella International transferred and assigned all of its interest in the copyright in *The Last Tattoo* to Plaintiff (SAC ¶ 23). The forgoing assignment of copyright was

effectuated pursuant to written transfer of copyright agreement entered into and signed by Capella International and Plaintiff (SAC ¶ 23).

Defendants argue that the cited certificate "reflects the registration of a textual work (a script), not a copyright registration for the motion picture work." Defs.' Memo at 9. To be clear, certificate No. PA0000824942 does reflect the registration of a copyright in the motion picture *The Last Tattoo*. In fact, the title of the certificate clearly reflects the registration of a copyright in a <u>motion picture</u>.  To wit: "The Last Tattoo / Plumb Productions and Capella International presents a <u>John Reid film</u> in association with the <u>New Zealand Film Commission</u>, <u>Avalon NFU Studios</u>, New Zealand on Air; <u>director</u>, John Reid" (emphasis added). Lebowitz Decl., Ex. D.  As does the description of work: <u>Videocassette</u>; 1/2 in. Id.

To the extent the Copyright Office has labeled the registration of the motion picture *The Last Tattoo* as a "textual work," while at the same time describing the contents of the work being registered in terms typical of registering a copyright in a motion pictures, then this merely raises a disputed issue of fact which can be clarified though discovery.  The Copyright Office's own confusion does not warrant dismissal of Plaintiff's SAC.

Accordingly, a copyright in *The Last Tattoo* was properly registered with the Copyright Office (PA0000824942; Lebowitz Decl., Ex. D), and after a series of written transfers, Capella International's interest in that copyright was validly transferred - from Capella International to Plaintiff - via a written transfer of

copyright agreement signed by Capella International and Plaintiff.

Plaintiff owns an interest in the registered copyright in *The Last Tattoo* and is entitled to assert these claims for copyright infringement.

    4.   Austin Powers

As set forth in the SAC, Plaintiff is the owner of the international copyright in, and international distribution rights for, the Motion Picture Austin Powers. SAC ¶ 16 (a).

Defendants argue that the cited certificates for Austin Powers are not copyright registrations for a motion picture and are certificates reflecting recordation of (i) a transfer of copyright (Reg. No. V3405D622, dated October 20, 1997; Lebowitz Decl., Ex. E) from New Line Productions, Inc. ("New Line") to Capella International, Inc. ("Capella International"); and (ii) a transfer of copyright (Reg. No. V3408D529, dated December 29, 1997; Lebowitz Decl., Ex. F) from Capella International to Erste KC Medien (Defs.' Memo at 8, 12). Defendants' arguments do not contradict Plaintiff's allegation that he is the owner of the international copyright in *Austin Powers*.

To be clear, the first referenced certificate (Reg. No. V3405D622; Lebowitz Decl., Ex. E) does indeed reflect a written transfer of copyright in *Austin Powers*; specifically, the written transfer of ownership of the international copyright in *Austin Powers* from New Line to Capella International[1] (SAC ¶ 16 (a)).  Similarly, the

_____

[1] Capella International was assigned ownership of the international copyright in *Austin Powers* pursuant to a July 10, 1996 written production agreement entered into between New Line and Capella International, wherein New Line, as the owner of the copyright in *Austin Powers* (Registration No. PA0000841048; Lebowitz Decl., Ex. G), granted to Capella International the rights to the

second referenced certificate (Reg. No. V3408D529; Lebowitz Decl., Ex. F) also reflects a written transfer of copyright in *Austin Powers*; specifically, the written transfer of ownership of the international copyright in *Austin Powers* from Capella International to Erste KC Medien (SAC ¶ 16 (a)).

Thereafter, Erste KC Medien transferred and assigned all of its interests in the international copyright in *Austin Powers* to Capella Films (SAC ¶ 17); and Capella Films transferred and assigned all of its interest in the international copyright in *Austin Powers* to Plaintiff (SAC ¶ 22).  Each of the forgoing assignments were effectuated pursuant to written transfer of copyright agreements entered into and signed by each party.

Accordingly, a copyright in *Austin Powers* was registered with the Copyright Office (Reg. No. PA0000841048; Lebowitz Decl., Ex. G), the ownership right in the international copyright in *Austin Powers* was then transferred, in writing, from: New Line to Capella International (SAC ¶ 16 (a); Lebowitz Decl., Ex. E); Capella International to Erste KC Medien (SAC ¶ 16 (a); Lebowitz Decl., Ex. F); from Erste KC Medien to Capella Films (SAC ¶ 17); and finally, from Capella Films to Plaintiff (SAC ¶ 20).  Each transfer of copyright agreement was in writing and signed by both parties to the transfer.

Accordingly, Plaintiff owns the rights to the International Copyright in *Austin Powers* and is entitled to assert these claims for copyright infringement.

---

international copyright in Austin Powers (Registration No. V3405D622; Lebowitz Decl., Ex. E).

5.   <u>Drop Dead Gorgeous</u>

As set forth in the SAC, Plaintiff is the owner of the international copyright in, and international distribution rights for, the Motion Picture *Drop Dead Gorgeous*, as referenced by a Memorandum of Sale ("Memo of Sale") filed with the Copyright Office under registration No. V3450D488, dated March 20, 2000. SAC ¶ 16 (b); see also Lebowitz Decl., Ex. H.

Defendants argue that the cited certificate is not a copyright registration for a motion picture, but is a certificate reflecting recordation of a memorandum of sale between New Line, on the one hand, and Meyamo Productions, Inc. ("Meyamo"), Erste KC Medien, Zweite KC Medien, and Dritte Beteiligung KC Medien AG & Co. KG ("Dritte KC Medien"). Defs.' Memo at 9.  As Plaintiff has alleged, he is the owner of the international copyright in *Drop Dead Gorgeous* as the result of a series of written assignment agreements.  Defendants arguments do not contradict Plaintiff's allegation that he is the owner of the international copyright in *Drop Dead Gorgeous*.  SAC ¶¶ 17-18, 20-22.

The Memo of Sale, filed with the Copyright Office (Registration No. V3450D488; Lebowitz Decl., Ex. H), is an exhibit to a written finance and production agreement dated May 18, 1998, and entered into between New Line, on the one hand, and Meyamo, Erste KC Medien, Zweite KC Medien, and Dritte KC Medien[2], on the other hand, wherein New Line, as the owner of the registered copyright in *Drop Dead Gorgeous*

---

[2] In the Drop Dead Gorgeous Agreement, Meyamo, Erste KC Medien, Zweite KC Medien and Dritte KC Medien are collectively defined as "Co-Producer."

(Registration No. PA0000951217; Lebowitz Decl., Ex. I) granted to Meyamo, Erste KC Medien, Zweite KC Medien and Dritte KC Medien, the rights to the international copyright in Drop Dead Gorgeous (the "Drop Dead Gorgeous Agreement").  The Memo of Sale[3], filed with the Copyright Office, reflects the recording of the transfer of ownership of the international copyright in *Drop Dead Gorgeous* from New Line to Meyamo, Erste KC Medien, Zweite KC Medien and Dritte KC Medien, which occurred pursuant to the written Drop Dead Gorgeous Agreement.

As alleged in the SAC, Erste KC Medien and Zweite KC Medien then transferred and assigned all of their interests in the international copyright in *Drop Dead Gorgeous* to Capella Films (SAC ¶¶ 20-21), and Capella Films later transferred and assigned all of its interests in the international copyright in *Drop Dead Gorgeous* to Plaintiff (SAC ¶ 22).  Each of the forgoing assignments were effectuated pursuant to written agreements entered into and signed by each party (SAC ¶¶ 17-18; 20-22).

Accordingly, a copyright in *Drop Dead Gorgeous* was registered with the Copyright Office (Registration No. PA0000951217; Lebowitz Decl., Ex. I), and the ownership right in the international copyright in *Drop Dead Gorgeous* was transferred in writing from: New Line to Erste KC Medien, Zweite KC Medien and Dritte KC Medien[4]; Erste KC Medien and Zweite KC Medien to Capella Films (SAC ¶¶ 20-21); and

---

[3] Pursuant to the Drop Dead Gorgeous Agreement, New Line delivered to Co-Producer a fully executed Memo of Sale for the Picture, which confirmed New Line's assignment to Co-Producer of the International Picture Copyright and International Distribution Rights; as was provided for in the Drop Dead Gorgeous Agreement.
[4] As reflected in the Memo of Sale filed with the Copyright Office (registration No. V3450D488; Lebowitz Aff., Ex. H)

14

Capella Films to Plaintiff (SAC ¶ 22).  Each transfer of copyright

agreement was in writing and signed by both parties to the transfer.

Accordingly, Plaintiff owns the rights to the International

Copyright in *Drop Dead Gorgeous* and is entitled to assert these claims

for copyright infringement (SAC ¶¶ 17-18, 20-22).

Based on the details in the SAC, the Court should find that

Plaintiff has adequately alleged ownership of valid, registered

copyrights in the Motion Pictures. See *Warren v. John Wiley & Sons,

Inc*., 952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013) (allegations that

plaintiff owns copyrights and that copyrights have been registered

sufficient to survive motion to dismiss).  In fact, Plaintiff has far

surpassed the requisite detail required to be plead.

None of Defendants' arguments in their Motion to Dismiss alter

this conclusion. Defendants argue that the Copyright Office records

reflect names other than Plaintiff (Defs. Memo at 11-12).  But the

Copyright Office records do not need to name Plaintiff.  Plaintiff has

alleged that certificates of copyrights in the Motion Pictures – each

of which was registered with the Copyright Office (SAC ¶¶ 15-16;

Lebowitz Decl. Exs. A, C, D, G, I) - were transferred in a series of

written assignment agreements (SAC ¶¶ 17-21; Lebowitz Decl. Exs. B, E,

F, H) - until the ownership in the Motion Pictures was ultimately

transferred, in a signed writing – from the respective owners[5], to the

Plaintiff (FAC ¶¶ 22-23).  These written assignment agreements did not

---

[5] Capella Films, Inc. as owner of the Motion Pictures *After the Rain*,
*Commander Hamilton*, *Austin Powers* and *Drop Dead Gorgeous* (SAC ¶ 22) and
Capella International, as owner of the Motion Picture *The Last Tattoo* (SAC ¶
23)

need to be filed with the Copyright Office under Section 205 of the
Copyright Act. 17 U.S.C. § 204(a).  Nor did Plaintiff need to annex
the written agreements to the SAC, describe the contents of the
assignments in detail, or even allege that the written assignments
were each signed by the owners of the assigned interest; as Defendants
incorrectly contend that he must (Defs.' Memo pp. 11-12).

Next, Defendants argue that the Copyright Office records list
additional non-parties as claimants to the copyrights, who are not
discussed in the chain of title (Defs.' Memo at 12). These arguments
are also irrelevant.

Plaintiff has alleged that he holds an ownership in the
copyrights in the Motion Pictures, and that ownership is sufficient
for him to bring these claims (SAC ¶¶ 17-23).  Indeed, "[t]he right to
prosecute an accrued cause of action for infringement is ... an
incident of copyright ownership" and "may be exercised independently
of co-owners." *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007); see
also *Copyright.net Music Pub. LLC v. MP3.com*, 256 F. Supp. 2d 214, 218
(S.D.N.Y. 2003) ("[T]here was simply no legal basis for requiring
plaintiffs to join all co-owners of the compositions at issue.").

Finally, Defendants argue that the SAC's "allegations conflict
with pleading Plaintiff filed in a New York action relating to the
same Motion Pictures" (the "New York State Litigation") (Defs.' Memo
at 12-14).

First, the New York State Litigation concerns a breach of a
licensing agreement; not a claim for copyright infringement.  The
parties in that lawsuit were chosen by the Plaintiff, Screen Media

16

Ventures, which sued Capella International, its contract counter-
party, for a declaration that the contract was not terminated back in
2011.  The proper party on claims relating to a distribution agreement
(entered into in 2002) are not necessarily the same as the proper
plaintiff for post 2017 copyright infringement; and Defendants do not
make any case for why they should be the same.  And as a matter of
law, Defendants' motion on this issue purports to introduce facts and
evidence which were not included or relied on by Plaintiff in the FAC
and thus are not properly considered on a Rule 12(b)(6) motion to
dismiss. Rule 12(d) of the Federal Rules of Civil Procedure precludes
consideration of extra-pleading materials and states that the Court
"must" either exclude such extrinsic evidence from consideration or
convert a motion to one for summary judgment. Fed. R. Civ. P. 12(d);
see also *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g
Co.*, 712 F. Supp. 2d 84, 84 (S.D.N.Y. 2010). This requirement is
"strictly enforced" and must be applied whenever a defendant relies on
extra-pleading materials in moving to dismiss. *Chambers v. Time
Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). Merely referencing a
document in the pleadings is not sufficient for it to be considered on
a motion to dismiss--it must have been relied upon in bringing the
claims. Id. at 153 ("[A] plaintiff's reliance on the terms and effect
of a document in drafting the complaint is a necessary prerequisite to
the court's consideration of the document on a dismissal motion; mere
notice or possession is not enough.")  Here, Plaintiff did not rely on
any pleading in the New York State Action in drafting the FAC, and
there is nothing about the state court contract case that supports a

17

dismissal of this case.

In summary, Plaintiff has adequately alleged ownership and registration of copyrights in the Motion Pictures.  Inf act, Plaintiff has well exceeded the detail required at this stage.  The balance of the motion to dismiss is premature, at best, as a motion directed toward the pleading.

III.  PLAINTIFF HAS ADEQUATELY PLEAD COPYRIGHT INFRINGEMENT CLAIMS.

A.    Plaintiff Has Adequately Plead A Claim
      For Direct Copyright Infringement

To state a claim for direct infringement, a plaintiff need only allege "1) ownership of valid copyright and 2) violation of one of the exclusive rights of owners under the Copyright Act." *Arista Records LLC v. Usenet.com, Inc*., 633 F.Supp. 2d 124, 146 (S.D.N.Y. 2009) (quoting *Byrne v. British Broad, Corp*., 132 F.Supp. 2d 229, 232 (S.D.N.Y 2001)).  Additionally, a finding of direct infringement only "requires a showing that Defendants engaged in some volitional conduct sufficient to show that they actively engaged in distribution of the copies of Plaintiffs' copyrighted [works]." *Arista Records*, 633 F.Supp. 2d at 147-48.

Plaintiff has alleged that Defendants, without license or authorization, have reproduced and distributed the Motion Pictures *After the Rain, Commander Hamilton* and *The Last Tattoo* to end users of Google Play Movies and YouTube Movies located in the United States. Defendants do not address this claim for dismissal on the pleading, other than as part of their "ownership" argument.

Plaintiff has stated a claim for direct copyright infringement.

18

Defendants do not directly address these allegations, except as a by-product of the ownership issue addressed above. Defendants' request to dismiss this claim should be denied.

B.    Plaintiff Has Pleaded a Predicate Act of
      Infringement in the United States Which Led
      to Further Infringement Outside the United States

U.S. Courts have long held that the U.S. Copyright Act has no extraterritorial application. See *Subafilms, Ltd. V. MGM-Pathe Communications, Co*., 24 F.3d 1088, 1095-96 (9th Cir. 1994) (citing United Dictionary Co. v. G & C. Merriam Co., 208 U.S. 260, 264-66 (1908)); *Carell v. Shubert Organization, Inc*., 104 F.Supp 2d. 236, 242 (S.D.N.Y. 2000).

However, an equally well settled "exception exists where the defendant commits a predicate act of infringement within the United States." See *Richard Feiner & Co., Inc. v. BMG Music Spain, S.A.*, 2003 WL 740605, at *2 (S.D.N.Y. Mar. 4, 2003) (citing *Update Art, Inc. v. Modiin Pub., Ltd*., 843 F.2d 67, 73 (2d Cir. 1998) (applicability of American copyright laws depends on the occurrence of a predicate act in the United States); see also *Robert Stigwood Group, Ltd. v. O'Rei*lly, 530 F.2d 1096, 1100 (2d. Cir. 1976)(an established exception provides that extraterritorial acts are subject to the Act where there is infringement within the United States "that permits further reproduction abroad").

Here, Plaintiff has pled that Defendants committed a predicate act of infringement – the unauthorized reproduction of the Motion Pictures *After the Ra*in, *Commander Hamilton*, *The Last Tattoo*, *Austin Powers*, and *Drop Dead Gorgeous* within the United States – each

reproduction a violation of The Copyright Act - which then led to further infringement abroad (SAC ¶¶ 35-43, 48-50. 70-72).  See *Update Art*, 843 F.2d at 72 (the unauthorized manufacture of infringing goods within the United States for subsequent sale abroad may give rise to a cause of action under the Copyright Act, even where the actual sale and distribution of infringing goods occurs outside of the United States).

Moreover, discovery will show that Defendants' reproduction of *Austin Powers and Drop Dead Gorgeous* - which copies were exclusively designed and authorized for distribution in foreign markets - violated Plaintiff's exclusive right to reproduce pre-approved copies of *Austin Powers* and *Drop Dead Gorgeous* for foreign distribution.

Accordingly, Plaintiff has adequately pleaded that Defendants committed a predicate act of infringement in the United States which led to further infringement outside of the United States, and Defendants' motion to dismiss should be denied.

C.   Plaintiff Has Adequately Plead A Claim For
     Contributory Copyright Infringement

Having failed to challenge direct infringement or that Defendants have committed a predicate act of infringement within the United States which contributed to further infringement abroad, the Defendants turn their attention to the contributory copyright infringement claim.  Contributory infringement occurs where "one ... with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162 (2d

Cir.1971). The knowledge standard is an objective one; contributory infringement liability is imposed on persons who "know or have reason to know" of the direct infringement. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("willful blindness is knowledge"). Evidence of such actual and constructive knowledge may be found in "cease-and- desist letters, officer and employee statements, promotional materials, and industry experience." *Capitol Records, LLC v. ReDigi Inc*., 934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013). In fact, the "'resolution of the issue ... depends upon a determination of the function that [the alleged infringer] plays in the total [reproduction] process.'" *Gershwin*, 443 F.2d at 1162 n. 8. That is to say, what role does the Defendant have in the whole process of the infringement? See *Arista Records, LLC v. Doe 3*, 604 F.3d at 118.

In this case, Plaintiff alleges that end users of Google Play Movies and YouTube Movies located within the United States (i) rented or purchased copies of Plaintiff's copyright protected motion pictures *After the Rain, Commander Hamilton* and *The Last Tattoo*; (ii) without license of authorization; and thus, (iii) engaged in direct copyright infringement of Plaintiff's exclusive rights of reproduction and distribution of *After the Rain, Commander Hamilton* and *The Last Tattoo* (SAC ¶¶ 90, 92). Moreover, Plaintiff alleges that Google facilitated, directed and managed the unauthorized distribution of *After the Rain, Commander Hamilton* and *The Last Tattoo* and materially contributed to the direct violation of copyright laws by the end users of Google Play Movies and YouTube Movies who rented or purchased *After the Rain, Commander Hamilton* and The Last Tattoo (SAC ¶¶ 93-95). Finally,

Plaintiff alleges that Google employed a digital rights management team, had access to license information regarding *After the Rain, Commander Hamilton*, and *The Last Tattoo*, and had the benefit of industry experience in the distribution of digital content, such that Google knew or should have known that they were not licensed or authorized to distribute *After the Rain, Commander Hamilton and The Last Tattoo*, and therefore, end users of Google Play Movies or YouTube Movies who rented or purchased Plaintiff's Motion Pictures would be infringing on Plaintiff's copyrights in *After the Rain, Commander Hamilton and The Last Tattoo* (SAC ¶¶ 93-95).

First, Defendants attempt to challenge what they claim are insufficient allegations – which Plaintiff has plead, "upon information and belief" - regarding how Defendants receive, reproduce and distribute digital content across the Google Play Movies and YouTube Movies platforms. Defs.' Memo at 16-17. Defendants should not be allowed to argue in a pre-answer, pre-discovery motion to dismiss, that Plaintiff's SAC does not adequately allege the specific facts – which are entirely in Defendants' possession - concerning how and from whom Defendants obtained the Motion Pictures, and the secretive and byzantine manner in which Defendants stored the Motion Pictures on their Data Servers and distributed them to end users of Google Play Movies and YouTube Movies located in the United States and abroad.

By way of example, here are just some of the factual issues which are – at this stage, in pre-discovery - entirely within Google's knowledge: How and from whom, Google obtained copies of Plaintiff's Motion Pictures; the manner in which Google would make backup copies

of its data – such as Plaintiff's Motion Pictures – on and across its
Data Servers, for use by Google Play Movies and YouTube Movies; the
number of Google's Data Servers and their locations within the United
States and in Foreign Countries; the number of times Plaintiff's
Motion Pictures were purchased or rented by end users of Google Play
Movies and YouTube Movies who were located abroad, and in what
countries, etc.  Discovery will reveal this information and how it
supports the "information and belief" pleadings.  At this time,
however, Defendants should not be entitled to use the Motion to
Dismiss as a sword and a shield.

Defendants argue that Plaintiff does not allege that Plaintiff
sent Defendants a "cease and desist" letter or that anyone from Google
stated that they were aware of Plaintiff's alleged interests, but
these arguments are unpersuasive (Defs.' Memo at p. 16).  These
arguments are also, again, not appropriate to support dismissal of the
claim or the pleading.  Indeed, while Defendants are asking Plaintiff
whether he sent Defendants any "cease and desist" letters, Plaintiff
is asking Defendants why they reproduced and distributed the Motion
Pictures – in the United States and abroad – without ever receiving
Plaintiff's express authorization or approval; none of which,
Plaintiff has given Defendants.

Here, Defendants offer no explanation.  In fact, it must be noted
that at no point in the Defendants' motion do they deny that they
distributed Plaintiff's Motion Pictures or allege that they were
licensed or authorized to engage in such distribution.
Plaintiff should be entitled to discover (i) from which film

distributor or other source did Google receive copies of *After the Rain, Commander Hamilton* and *The Last Tattoo*; (ii) what licensing information accompanied the digital copies of *After the Rain, Commander Hamilton and The Last Tattoo*; and (iii) when, where and to which end users did Defendants distribute *After the Rain, Commander Hamilton* and *The Last Tattoo*.  The Defendants have possession of, control of and access to the full extent of the infringement; and the full accounting of their reproduction and distribution to their end users of Google Play Movies and YouTube Movies. The proper means to address this informational deficit is through discovery (and, if appropriate, summary judgment), not a motion to dismiss.

Finally, Defendants argue that the allegations are conclusory and insufficient. Plaintiff believes that SAC contains enough factual allegations to infer that Defendants knew, should have known or were willfully blind as to their own and hence their subscribers' infringement, and that Google, through Google Play Movies and YouTube Movies - induced, caused and materially contributed to the infringing conduct of their subscribers. This case is not about a peer-to-peer site, or some other website where it is unrelated third-parties who are uploading and streaming unauthorized copies of the Motion Pictures. Rather, here it was Google itself using Google Play Movies and YouTube Movies as the very instrument of infringement. The critical fact is not that the Google Play Movies website and service or the YouTube

Movies website and service are each capable of non-infringing uses[6], but that Defendants' use of Google Play Movies and YouTube Movies in this specific infringement of Plaintiff's Motion Pictures was total and culpable. Discovery will show that Google contributed to its subscribers' direct infringement of Plaintiff's Motion Pictures; which infringement occurred hundreds of times or more. The motion to dismiss a claim for contributory copyright infringement must be denied.

> D.    Plaintiff Has Adequately Plead A Claim
>        For Vicarious Copyright Infringement

To state a claim for vicarious liability, a plaintiff must allege that a party "had the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin*, 443 F.2d at 1162; see also, *Metro-Goldwyn-Mayer Studios Inc.*

---

[6] Defendants cite to *Smith v BarnesandNoble.com, LLC*, 143 F.Supp.3d 115, 124-126 (S.D.N.Y 2015) for the alleged precedent in this Circuit that "where a defendant's system is merely capable of substantial non-infringing uses, the defendant will not be liable for contributory infringement" (Defs' Memo. At p. 17). Here, Defendants play a game of misdirection.  The quote Defendants refer to in *Smith* is not that any platform merely capable of non-infringing uses is automatically exempt from liability for contributory infringement, but rather, that a Court must inquire into whether a product (such as copying equipment), service or platform is capable of non-infringing uses when considering whether a defendant had actual or constructive knowledge of the alleged infringing activity. Id. at 124.  This is a factual inquiry, however, and *Smith* can be distinguished on the facts.  In *Smith*, the author had agreed to license his e-Book to Barnes and Noble for digital distribution, and had even uploaded the e-Book for this purpose.  After the author had terminated the license, and before Barnes and Noble claims to have learned about the author's termination, one customer was able to download two sample copies (5% of the entire e-Book) of the author's e-Book to two, personal e-reader devices.  Id. At 118-120.  In the case *sub judice*, it was Defendants who reproduced and distributed Plaintiff's Motion Pictures via the Google Play Movies and YouTube Movies platforms.  There was no license for such distribution, and Plaintiff's Motion Pictures were distributed – without authorization – thousands of times.  The facts here are completely different than in *Smith*. Equally important, *Smith* involved a Motion for Summary Judgment.  Defendants should not be entitled to rely on *Smith* in support of their pre-answer, pre-discovery, Motion to Dismiss.

*v. Grokster*, 545 U.S. 913, 930 (2005) (vicarious copyright
infringement exists where a defendant profits from direct infringement
"while declining to exercise the right to stop or limit it.").
Knowledge is not required to show vicarious liability. *Arista Records
LLC v. Usenet.com, Inc.*, 633 F.Supp.2d at 156.

As alleged in the SAC, Google owned and operated the YouTube
Movies website and service, during the alleged period of unauthorized
distribution of Plaintiff's Motion Pictures via YouTube Movie; from
July 2017 through 2018. (SAC ¶ 7).  Moreover, Plaintiff has alleged
that YouTube – and its YouTube Movies service - is a wholly owned
subsidiary of Google (SAC ¶ 5).  Plaintiff has adequately alleged that
Google could exercise control over YouTube and its distribution of the
Motion Pictures via YouTube Movies - and had the right and ability to
supervise YouTube Movie's unauthorized distribution of Plaintiff's
Motion Pictures - but declined to do so because Google was directly
profiting from YouTube Movie's continued, unauthorized distribution of
the Motion Pictures (SAC ¶¶ 104-106).

Defendants' motion to dismiss Plaintiff's vicarious copyright
liability claim should be denied and the parties allowed to proceed to
discovery.

E.   This Court Can Adjudicate Claims of
     Infringement Under Foreign Copyright Law

Contrary to Defendants' arguments, it does not follow that
Plaintiff is unable to plead and recover for extraterritorial
copyright infringements, which are wholly and exclusively governed by
foreign, not United States, copyright law.

26

This fact becomes evident when one considers the numerous cases in which United States courts have applied foreign copyright law for extraterritorial violations, despite the existence of § 104(c), the Berne Convention or any other provision that Defendant might mistakenly point to for purposes of defeating Plaintiff's foreign infringement cause of action. Both the Second and Ninth Circuits - the two courts with the leading bodies of copyright jurisprudence - have repeatedly acknowledged the viability of such actions. In *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481 (2d Cir. 1998), the Second Circuit reinstated claims of copyright infringement under the laws of at least eighteen different foreign countries in a federal district court suit against an American corporation. Id. at 491-92. Similarly, in *London Film Prods. Ltd v. Intercontinental Communications, Inc.*, 580 F. Supp. 47, 49-50 (S.D.N.Y. 1984), a federal district court had no problem ruling that the plaintiff had a viable cause of action against defendant, an American corporation, based on its British copyright for infringement under the laws of Chile. Indeed, the court allowed the suit despite the fact that the work at issue - a motion picture - had fallen into the public domain under the law of the United States (but not the laws of the United Kingdom and Chile). See also *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 628, 637 (S.D.N.Y. 2000) ("Not only is this Court called upon to enter bramble bushes, briar patches, and other thorny legal thickets on a routine basis...but a number of persuasive authorities and commentators have also indicated that the exercise of subject matter jurisdiction is appropriate in cases of transnational

copyright infringement"); *Carell v. Shubert Organization, Inc.*, 104 F. Supp. 2d at 258 ("there is no reason to believe that the Court would be foreclosed from applying foreign law to plaintiffs foreign infringement claims"); *World Film Servs., Inc. v. RAJ Radiotelevisione Italiana S.p.A*, No. 97 Civ. 8627 (LMM), 1999 WL 47206, at *8 (S.D.N.Y. Feb. 3, 1999) (allowing plaintiff to pursue a claim in federal district court for copyright infringement under the laws of Italy); *Frink America, Inc. v. Champion Road Machinery Ltd.*, 961 F. Supp. 398, 404-05 (N.D.N.Y. 1997) (allowing plaintiff to pursue a claim in federal district court for copyright infringement under the laws of Canada). Similarly, the authors of two leading treatises on copyright law have both recognized the ability of courts to hear such claims. See Melville and David *Nimmer*, *Nimmer* on Copyright § 17.03 (1999) ("If the plaintiff has a valid cause of action under the copyright laws of a foreign country, and if personal jurisdiction of the defendant can be obtained in an American court, it is arguable that an action may be brought in such court for infringement of a foreign copyright law."); Paul *Goldstein*, 3 Copyright: Principles, Law and Practice § 16.2 (2000) ("subject to jurisdictional requirements, a copyright owner may sue an infringer in United States courts even though the only alleged infringement occurred in another country.")  As such, there is no merit to Defendants' claim that an action for copyright infringement under Foreign Copyright Laws cannot be brought against Defendants as a matter of law in this Court.

As noted earlier, Defendants should not be allowed to argue in a pre-answer, pre-discovery motion to dismiss, that Plaintiff's SAC does

not adequately allege the specific facts - in Defendants' exclusive

possession - as to the inner workings of Google Play Movies and

YouTube Movies' byzantine digital distribution services, and how

Plaintiff's Motion Pictures were distributed to end users of Google

Play Movies and YouTube Movies in the Foreign Countries. This

information is entirely within Google's knowledge.  At this time,

Defendants should not be entitled to use the Motion to Dismiss as a

sword and a shield.

## CONCLUSION

Defendants seek this Court's assistance in keeping its conduct

secret and insulating it from consequences. For all of the reasons set

forth above, Plaintiff respectfully requests that the Court deny

Defendants' pre-answer, pre- discovery motion in its entirety,

together with such other and further relief that the Court may deem

just, proper and equitable.

Dated: New York, New York
       March 30, 2021

                         LEBOWITZ LAW OFFICE, LLC


                         By:   /s/ Marc A. Lebowitz
                               Marc A. Lebowitz
                               Keith M. Getz
                               38 West 38th Street
                               Suite 1002
                               New York, New York 10017
                               Attorneys for Plaintiff Ralf
                               Hartmann