UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
RALF HARTMANN, :
:
Plaintiff, :
: 20 Civ. 5778 (JPC)
-v- :
: <u>ORDER</u>
:
GOOGLE LLC and YOUTUBE LLC, :
:
Defendants. :
:
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Ralf Hartmann, who claims to own copyrights in five motion pictures, alleges that Defendants Google LLC and YouTube LLC infringed those copyrights by distributing the films on their platforms. He pleads direct, contributory, and vicarious infringement of his copyrights in those films, including violations of U.S. copyright laws and the copyright laws of various foreign countries. Defendants have moved to dismiss. For reasons that follow, the Court denies the motion as to Hartmann's claim of direct copyright infringement alleged in Count One. The Court grants, however, the motion as to the remaining Counts, and dismisses Hartmann's claims of contributory infringement relating to the alleged infringing activities of Defendants' domestic and foreign customers, vicarious infringement against Google arising from YouTube's activities, and infringement in foreign countries in violation of those countries' laws.

## I. Background

### A. Facts[1]

#### 1. The Copyrights

Ralf Hartmann, a citizen and resident of Germany, alleges that he owns copyrights or international distribution rights for five motion pictures (collectively, the "Films"). SAC ¶¶ 3, 15-16. He claims ownership of copyrights in the films *After the Rain*, *Commander Hamilton*, and *The Last Tattoo*, *id.* ¶ 15,[2] and international copyrights in, and international distribution rights for, *Austin Powers: International Man of Mystery* ("*Austin Powers*") and *Drop Dead Gorgeous*, *id.* ¶ 16.

Citing records of the United States Copyright Office, Hartmann claims that entities called Erste Beteiligung KC Medien AG ("Erste KC Medien"), Zweite Beteiligung KC Medien AG ("Zweite KC Medien"), and Capella International, Inc. ("Capella") each at some point obtained copyrights in the Films:

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from Hartmann's Second Amended Complaint, Dkt. 31 ("SAC"), and from documents the Complaint attaches as exhibits and incorporates by reference. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). In doing so, the Court "draw[s] all inferences in the plaintiff's favor." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). Accordingly, the Court considers the copyright registration documents that were attached as exhibits to the Second Amended Complaint. After Defendant objected to Hartmann's failure to supply certain copyright registrations, Hartmann submitted a declaration with those materials attached as exhibits. Dkt. 43 ("Lebowitz Decl."). Defendants do not question the documents' authenticity, *see generally* Dkt. 48 ("Reply"), and the Court may consider them at this motion to dismiss stage because copyright registrations are public records susceptible to judicial notice, *see TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016).

[2] Hartmann also alleges that he owns a copyright in a motion picture called *Pete's Meteor*, SAC ¶ 15(d), Exh. D, but the Second Amended Complaint does not allege any copyright infringement by Defendants with respect to that movie.

- Erste KC Medien, Zweite KC Medien, and Capella registered shares of copyrights in *After the Rain* in 2001.  *Id.* ¶¶ 17-19, Exh. A.

- Moviola Film & Television, AB ("Moviola") registered a copyright in *Commander Hamilton* on June 1, 1998.  Lebowitz Decl., Exh. C.  A memorandum transferring exclusive rights in the film from Moviola to Erste KC Medien, Zweite KC Medien, and Capella was registered soon after on July 2, 1998.  SAC ¶¶ 17-19, Exh. B.

- Capella registered a share of a copyright in *The Last Tattoo* in 1996.  *Id.* ¶ 19, Exh. C.

- New Line Productions, Inc. ("New Line") registered a share of a copyright in *Austin Powers* on June 5, 1997.  Lebowitz Decl., Exh. G.  A document transferring that copyright from New Line to Capella was filed with the Copyright Office on October 20, 1997.  SAC ¶ 19, Exh. E at 1.  Another transfer from Capella to Erste KC Medien was filed on December 29, 1997.  *Id.* ¶ 17, Exh. E at 2.

- New Line also registered a share of a copyright in *Drop Dead Gorgeous* in 1999.  Lebowitz Decl., Exh. I.  The next year, a memorandum of sale of the copyright from New Line to, among others, Erste KC Medien and Zweite KC Medien was filed with the Copyright Office.  SAC ¶¶ 17-18, Exh. F.

Thus, as alleged, by the end of this series of registrations and transactions, some combination of Capella, Erste KC Medien, and Zweite KC Medien owned copyrights in the Films. Hartmann submits that then on May 27, 2007, both Erste KC Medien and Zweite KC Medien entered written agreements to assign all of their interests in *After the Rain*, *Commander Hamilton*, *Austin Powers*, and *Drop Dead Gorgeous* to Capella.  *Id.* ¶¶ 20-21.  This meant that Capella had rights in all of the Films.  Several months later, on January 1, 2008, Capella entered a written agreement to assign its rights, titles, and interests in the Films to Hartmann.  *Id.* ¶¶ 22-23.

Hartmann maintains that, as a result, he now owns copyrights in *After the Rain*, *Commander Hamilton*, and *The Last Tattoo*, and international copyrights with distribution rights in *Austin Powers* and *Drop Dead Gorgeous*. *Id.* ¶¶ 24-25.

2. **Defendants' Activities**

Google owns and operates the Google Play Store, an online store that offers video on demand, *id.* ¶¶ 27-29, and YouTube, including YouTube Movies & Shows ("YouTube Movies"), which also offers video on demand, *id.* ¶¶ 32-33. Both the Google Play Store and YouTube Movies are accessible in the United States, as well as abroad. *Id.* ¶¶ 30-31, 33-34.[3] Hartmann alleges "[u]pon information and belief" that Google's data centers in the United States host digital content distributed through the Google Play Store and YouTube Movies. *Id.* ¶¶ 35, 39-40. All digital content offered through the Google Play Store and YouTube Movies "is initially received by and copied to" Google's American data centers regardless of the country of distribution. *Id.* ¶¶ 41-42. Google's American data centers serve Google Play Store and YouTube Movies users in the United States, while Google's foreign data centers serve users abroad. *Id.* ¶¶ 44-48.

Hartmann alleges that starting in July 2017, Google reproduced the Films across its American data centers to offer them for sale to users in the United States through the Google Play Store and YouTube Movies. *Id.* ¶¶ 48-50; *see also id.* ¶¶ 52, 55 (alleging that Google offered *After the Rain*, *Commander Hamilton*, and *The Last Tattoo* for sale or rent through the Google Play Store and YouTube Movies until at least December 2017). Also as of July 2017, Google allegedly transferred the Films from Google's American data centers to its foreign data centers. *Id.* ¶ 59.

---

[3] The Second Amended Complaint alleges that the Google Play Store is accessible in Australia, Denmark, Finland, Germany, Ireland, Norway, Sweden, and the United Kingdom, SAC ¶¶ 30-31, and that YouTube Movies is accessible in Australia, Germany, Ireland, and the United Kingdom, *id.* ¶ 34.

The Google Play Store, YouTube, and YouTube Movies then offered those films for sale or rent in countries including Denmark, Germany, Great Britain, and Ireland from July 2017 through 2018.  *Id.* ¶¶ 60-65, 68-69.

Hartmann avers that he never authorized Google's or YouTube's uses of the Films.  *Id.* ¶¶ 48, 61, 66, 70-71.  Moreover, according to Hartmann, Google's unauthorized reproduction of the Films on its American data centers caused Google's distribution of the Films outside the United States.  *Id.* ¶¶ 71-72.  Noting that Google has a "digital rights management team" that "monitor[s] its rights to prevent unauthorized usage," Hartmann further contends that, because the digital files of the Films include metadata with information concerning digital rights, including licenses and authorized distribution territories, Google knew or should have known that it was not authorized to copy or distribute the Films.  *Id.* ¶¶ 73-75.

**B.  Procedural History**

Hartmann commenced this lawsuit on July 24, 2020, Dkt. 1, and the case was initially assigned to the Honorable Edgardo Ramos.  On October 20, 2020, the case was reassigned to the undersigned.  Dkt. 14.  Hartmann filed an amended complaint on October 30, 2020.  Dkt. 18.  On December 15, 2020, Defendants moved to dismiss that first amended complaint, Dkt. 28, which was denied as moot after Hartmann filed the Second Amended Complaint, Dkt. 36.  The Second Amended Complaint pleads five causes of action: (1) direct copyright infringement in the United States by Google and YouTube; (2) copyright infringement by Google that caused further infringement outside the United States; (3) contributory copyright infringement by Google and YouTube, involving domestic and foreign users infringing Hartmann's copyrights; (4) vicarious copyright infringement by Google arising from YouTube's infringement; and (5) copyright infringement abroad, in violation of foreign laws, by both Google and YouTube.  SAC ¶¶ 80-112.

Defendants moved to dismiss the Second Amended Complaint on March 9, 2021, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkts. 39, 40 ("Motion").

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro*, 807 F.3d at 544, it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III. Analysis

### A. Direct Infringement (Count One)

Starting with the first cause of action, a copyright owner may sue for infringement of the "right[s] to reproduce the work, prepare derivative works, distribute the work to the public, perform the work, display the work, and perform the work by . . . digital transmission." *John Wiley & Sons v. DRK Photo*, 882 F.3d 394, 402 (2d Cir. 2018) (citing 17 U.S.C. §§ 105(b), 106). "A properly pleaded copyright infringement claim must allege (i) which specific original works are the subject of the copyright claim, (ii) that plaintiff owns the copyrights in those works, (iii) that the copyrights have been registered in accordance with the statute, and (iv) by what acts during

what time the defendant infringed." *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) (quotation and alterations omitted).

Defendants do not contest that Hartmann meets the first and fourth of those requirements. *See* Motion at 2-3, 7-14.  Nor could they plausibly.  The Second Amended Complaint identifies the Films with specificity, SAC ¶¶ 15-16, and alleges that Defendants infringed the copyrights by copying and distributing the Films in the United States without Hartmann's consent, *see, e.g.*, *id.* ¶¶ 48-57.  Defendants therefore only challenge the sufficiency of Hartmann's pleadings of his ownership and of the copyrights' registrations.

**1. Ownership**

"Under the Copyright Act, a certificate of registration from the United States Copyright Office constitutes prima facie evidence of the valid ownership of a copyright. . . .  But, when a copyright was transferred from the original registered owner to another party, . . . [the assignee] faces the additional burden of proving valid chain of title." *Hartmann v. Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 WL 3683510, at *4 (S.D.N.Y. Aug. 19, 2021) (quotations and alterations omitted).  A transfer of a copyright must occur via a signed writing.  17 U.S.C. § 204(a). At the motion to dismiss stage, "an assignee may assert a claim . . . that occurred after the transfer as long as he plausibly alleges that he received the copyright through a valid transfer and was the copyright owner during the alleged infringement." *Hutson v. Notorious B.I.G., LLC*, No. 14 Civ. 2307 (RJS), 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015).

Hartmann alleges the chain of title summarized above.  He had provided copies of the initial registrations of the copyrights.  *See* SAC, Exhs. A, C; Lebowitz Decl., Exhs. C, G, I.  And he has described how through a series of written transactions, Capella came to own shares of copyrights in the Films, and how Capella assigned its interests in the Films to Hartmann on January

1, 2008.  SAC ¶¶ 22-25.  While Defendants raise a laundry list of supposed deficiencies in these allegations, none provides grounds for dismissing Count One.

To begin, Defendants argue that the copyright certificates Hartmann has proffered do not "mention . . . Plaintiff's name."  But a copyright assignee, not just an initial registrant, may assert a claim, *see Hutson*, 2015 WL 9450623, at *3, and Hartmann alleges that he was such an assignee, *see* SAC ¶¶ 17-25.  As "nothing in the registration certificate" would "evidence[] [an assignee's] right," Hartmann's absence on the copyright registrations is no surprise; it is why he must instead "prov[e] his chain of title."  3 *Nimmer on Copyright* § 12.11[C] (2021).

Defendants correctly point out that Hartmann's chain of title does not expressly allege that the transfer contracts were *signed*, as 17 U.S.C. § 204(a) requires, but instead describes them as *written* assignments of copyright.  See SAC ¶¶ 16-25.  This is not Hartmann's first rodeo; he has faced motions to dismiss in litigation he has brought against Amazon and Apple alleging infringement over some of the same movies.  *See Amazon.com*, 2021 WL 3683510; *Hartmann v. Apple, Inc.*, No. 20 Civ. 6049 (GHW), 2021 WL 4267820 (S.D.N.Y. Sept. 20, 2021).[4]  In *Apple*, as in this case, Hartmann alleged a written transfer but not "explicitly . . . that the written assignment agreements were signed."  2021 WL 4267820, at *4.  But as the Honorable Gregory H. Woods explained, the court was "required to draw all reasonable inferences in [Hartmann]'s favor" on a motion to dismiss, and pleading a written agreement makes a signature plausible, as "[p]arties commonly sign written agreements they are entering."  *Id.*  That reasoning is persuasive, especially as the Second Amended Complaint describes a sequence of written transfers with reasonable specificity, and there is no allegation in the Second Amended Complaint to suggest that

---

[4] Hartmann also has sued Popcornflix.com and Chicken Soup for the Soul Entertainment, Inc., and a motion to dismiss is pending in that case.  *See Hartmann v. Popcornflix.com LLC*, No. 20 Civ. 4923 (VSB) (S.D.N.Y.), Dkt. 22.

the written assignment agreements were not signed.  *See* SAC ¶¶ 17-23; *see also* Opposition at 7 (representing that these documents were signed).

Defendants next fault Hartmann for merely "alleg[ing]" a transfer, rather than "attach[ing] actual agreements," Reply at 4-5; *see also* Motion at 11 n.2, but he need not provide such evidence to survive a Rule 12(b)(6) motion to dismiss.  At this stage, Hartmann need only "plausibly allege[] that he received the copyright through a valid transfer"; evidentiary inquiries will come later. *Hutson*, 2015 WL 9450623, at *3; *see also Amazon.com*, 2021 WL 3683510, at *5 (explaining that while the "attached exhibits d[id] not dispositively prove that Hartmann owns the copyrights to the films," there was no requirement that the complaint do so on a motion to dismiss).

Defendants also argue that Hartmann's allegations as to his chain of title contradict his pleadings in a state court litigation.  Motion at 13-15.  On October 4, 2013, Hartmann allegedly filed an answer and counterclaim in *Screen Media Ventures, LLC v. Capella Int'l, Inc. and Hartman[n]*, Index No. 654358/2012, Dkt. No. 16 (N.Y. Sup. Ct. Oct. 4, 2013).  Dkt. 41, Exh. A.  The document states that "[o]n or about June 27, 2002, . . . Capella and . . . Screen Media entered into an agreement and amendment . . . grant[ing] Screen Media the right to license and distribute nine . . . motion pictures . . . for . . . 15 years," and that those contracts were extended through December 30, 2017.  *Id.* at 8, 10.  Defendants urge the Court to take judicial notice of this filing in deciding their Motion.  Motion at 12-14.  "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also In re Dynagas LNG Partners LP Secs. Litig.*, 504 F. Supp. 3d 289, 312 n.3 (S.D.N.Y. 2020).  Thus, it would be premature for the Court to

consider the merits of this argument[5] in the context of Defendants' motion to dismiss, when the allegations of the Second Amended Complaint must be taken as true. Defendants may, of course, revisit this argument on summary judgment or at trial.

Finally, Defendants argue that the Second Amended Complaint does not plead ownership because Hartmann has not alleged that all of the "copyright claimants" on the registrations "unambiguously relinquished their interests." Motion at 12. But "[t]he right to prosecute . . . infringement is . . . an incident of copyright ownership" that "may be exercised by co-owners." *Apple*, 2021 WL 4267820, at *5 (quoting *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007)); *see also Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network*, No. 12 Civ. 965 (JRT) (FLN), 2012 WL 4470286, at *10 n.14 (D. Minn. Sept. 27, 2012).

Thus, Hartmann has adequately pleaded his ownership of copyrights in the Films.

**2. Registration**

Copyright registration is a "precondition to filing a claim" for copyright infringement. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (citing 17 U.S.C. § 411(a)). Defendants argue that the Second Amended Complaint should be dismissed because Hartmann did not attach three of the Films' copyright registrations to that Complaint, but only the registrations of transfer documentation. *See* Motion at 8-10.

The argument fails for two reasons. First, as noted previously, Hartmann supplemented the Second Amended Complaint with the copyright registrations that Defendants argue were lacking. *See* Lebowitz Decl., Exhs. C, G, I. Second, there is no requirement to "attach[] any

---

[5] Judge Woods expressed skepticism of this argument in *Apple*, observing that even if Hartmann's statements in the state case were taken as true, they "do not establish that Capella International, rather than Hartmann, held the rights to the films at the time of Apple's alleged infringement. Nor are the statements incompatible with the claim that Capella International assigned its rights to the films to Hartmann in 200[8]." *Apple*, 2021 WL 4267820, at *4.

copyright registration certificates" or "list[] the corresponding registration numbers" to survive a motion to dismiss. *Bill Diodato Photography LLC v. Avon Prods, Inc.*, No. 12 Civ. 847 (RWS), 2012 WL 3240428, at *8 (S.D.N.Y. Aug. 7, 2012); *see also Apple*, 2021 WL 4267820, at *5; *Amazon.com*, 2021 WL 3683510, at *5; *Hines v. Roc-a-Fella Recs., LLC*, No. 19 Civ. 4587 (JPO), 2020 WL 1888832, at *4 (S.D.N.Y. Apr. 16, 2020) (collecting cases).

* * *

In sum, because Hartmann has adequately identified the copyrights at issue, has pleaded a specific chain of title culminating in his ownership of them, has alleged their registrations, and has alleged that Defendants infringed those copyrights, he has stated a claim for direct infringement. Defendants' motion to dismiss Count One of the Second Amended Complaint is therefore denied.

**B. Contributory Infringement (Counts Two and Three)**

Hartmann's second and third claims seek to hold Defendants liable for contributing to copyright infringement that was committed by both Defendants' domestic and foreign customers. SAC ¶¶ 76-101.[6] "Although the Copyright Act does not expressly render anyone liable for infringement committed by another, it is well established . . . that one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117-18

---

[6] While Hartmann titles Count Two, "Direct Infringement of Copyright in the United States Causing Further Copyright Infringement Outside the United States," SAC at 19, the allegations that follow reflect a contributory infringement theory of liability against Google. He alleges that Google's copyright infringement, including the reproduction of the Films on Google's American data centers, "permitted further unauthorized reproduction and distribution of the motion pictures outside of the United States and further infringement by Google and YouTube's end-users in the Foreign Countries." SAC ¶ 81; *see also id.* ¶ 83 (alleging that "[a]s a direct and proximate result of Google's infringement of [Hartmann]'s copyrights and exclusive rights under copyright in the United States, Google permitted further infringement of [the Films] to occur outside the United States").

(2d Cir. 2010) (cleaned up).  To show contributory infringement, then, Hartmann must plead (1) that Defendants "kn[e]w or ha[d] reason to know of the direct infringement" of their customers, *id.* at 118 (quotations and emphasis omitted), and (2) that Defendants "encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement," *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011).  The latter requires more than "merely providing the means to accomplish an infringing activity," but instead "substantial" participation with "a direct relationship to the infringing acts" such that "the contributory infringer . . . acted in concert with the direct infringer."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 897 (S.D.N.Y. 2016) (quotations omitted); *accord BWP Media USA v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 356-57 (S.D.N.Y. 2014).

While the "copyright laws generally do not have extraterritorial application," an "exception" exists "when the type of infringement permits further reproduction abroad."  *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).  "Under the doctrine of contributory infringement, this exception can apply to extraterritorial infringement committed by a third party."  *Apple*, 2021 WL 4267820, at *6 (citing *Cooley v. Penguin Grp. (USA) Inc.*, 31 F. Supp. 3d 599, 610 & n.66 (S.D.N.Y. 2014)).

Defendants argue that they had no reason to know that their customers' activities directly infringed Hartmann's copyrights.  *See* Motion at 15-18.  The Second Amended Complaint alleges that Google should have known from metadata in the Films' digital files and its "industry experience" that Hartmann owned a copyright in each of the Films, and points to Google's employment of a digital rights management team responsible for preventing infringement.  SAC ¶¶ 96-98.  But Hartmann provides no further detail supporting those conclusory and speculatory allegations of knowledge, instead merely making them based "[u]pon information and belief."  *Id.*

He does not allege, for instance, that Defendants received any cease-and-desist letters, that he published his copyright ownership in promotional materials, or that anyone employed by Defendants acknowledged their awareness of Hartmann's copyright interests.

Hartmann pleaded nearly identical allegations of knowledge in *Amazon.com* and *Apple*, where the courts found the allegations to be insufficient as well. *See Amazon.com*, 2021 WL 3683510, at *6-7; *Apple*, 2021 WL 4267820, at *7. As in those cases, Hartmann "does not allege that . . . [Defendants] ordinarily would have discovered his interest," that Defendants "investigated the metadata," or that Defendants "had a particular business incentive to investigate the ownership." *Apple*, 2021 WL 4267820, at *7. Nor does Hartmann allege that Defendants "ever used" the digital rights technology "in a way that . . . would . . . tend[] to uncover . . . Hartmann's ownership interests," or that Defendants "had . . . any reason to suspect a lack of licensure . . . or . . . infringe[ment]." *Amazon.com*, 2021 WL 3683510, at *7. "At most, Hartmann has pleaded that [Defendants] had the general ability to discover Hartmann's rights." *Apple*, 2021 WL 4267820, at *7. And Hartmann's only response, that "Google itself us[ed] Google Play Movies and YouTube Movies as the . . . instrument[s] of infringement," Opposition at 24, does not show that Defendants knew of Hartmann's interest. Such allegations of generalized knowledge, not specific to the copyrights at issue, are insufficient to state a claim. *See Amazon.com*, 2021 WL 3683510, at *7 (collecting cases); *see also State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 358 (S.D.N.Y. 2020) ("[M]ore than a generalized knowledge . . . of the possibility of infringement is required." (quotation omitted)).[7]

---

[7] Because the Court finds that Hartmann failed to allege that Defendants had the requisite mental state, the Court does not reach Defendants' arguments that they did not materially contribute to infringing conduct and that their products have substantial noninfringing uses. *See* Motion at 18-20.

Defendants' motion to dismiss Counts Two and Three of the Second Amended Complaint is therefore granted.

## C. Vicarious Infringement (Count Four)

The Second Amended Complaint also seeks to hold Google vicariously liable for direct copyright infringement committed by YouTube. SAC ¶¶ 103-108. "A defendant is liable for vicarious copyright infringement by profiting from direct infringement while declining to exercise a right to stop or limit it." *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009) (quotations omitted). "Thus, vicarious liability is premised wholly on direct financial benefit and the right and ability to control infringement," not "knowledge or intent." *Id.*

The Second Amended Complaint merely recites the elements of the cause of action. Its only allegation of control is that YouTube was a Google subsidiary, SAC ¶ 5, and its only allegation of a financial benefit is that "Google . . . received a direct, financial benefit; financial advantages; and/or other economic consideration from[] YouTube's infringing activities," *id.* ¶ 104. Hartmann's Opposition adds nothing further on the matter, either. Opposition at 26. But Google's ownership of YouTube does not alone suffice to show control. *See Amazon.com*, 2021 WL 3683510, at *9 (collecting cases). And because the Court does not "accept as true [the] legal conclusion" of a financial benefit, *Lafaro*, 570 F.3d at 475-76, that allegation "will not suffice to defeat a motion to dismiss," *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 336 (2d Cir. 2006) (quotation and alterations omitted); *see also Amazon.com*, 2021 WL 3683510, at *9 (dismissing materially identical allegations on the same grounds). Count Four is therefore also dismissed.

### D. Foreign Law Infringement (Count Five)

The Second Amended Complaint's fifth and final cause of action alleges copyright infringement in foreign countries in violation of foreign laws. *See* SAC ¶¶ 107-112. Hartmann, however, "does not allege which foreign countries' laws [Defendants] violated" "[b]eyond reciting a nonexclusive laundry list of large countries," "let alone any specific foreign law that was violated, or the factual basis" for such violations. *Amazon.com*, 2021 WL 3683510, at *10; *see also Apple*, 2021 WL 4267820, at *7. Indeed, the Second Amended Complaint purports to state claims under no fewer than eight foreign countries' laws—but is "not limited to" those. SAC ¶¶ 2, 30, 112. Such vague allegations do not state a claim. *See Apple*, 2021 WL 4267820, at *8; *Amazon.com*, 2021 WL 3683510, at *10 (collecting cases). "The failure to identify which copyright laws other than those of the United States may have been violated by the defendants' alleged acts is especially problematic in light of Rule 44.1[,] . . . which requires that a party intending to raise an issue of foreign law do so by pleadings or other reasonable notice." *Vapac Music Pub., Inc. v. Tuff 'N' Rumble Mgmt.*, No. 99 Civ. 10656 (JGK), 2000 WL 1006257, at *7 (S.D.N.Y. July 19, 2000) (quotations omitted). Count Five thus is dismissed as well.

### IV. Conclusion

For all these reasons, Defendants' motion to dismiss is granted as to Counts Two through Five of the Second Amended Complaint, and denied as to Hartmann's claim of direct infringement in Count One. The Clerk of Court is respectfully directed to close the motion pending at Docket Number 39.

SO ORDERED.

Dated: March 8, 2022
New York, New York

JOHN P. CRONAN
United States District Judge